# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CASA, INC. et al.,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Maryland, Case No. 8:25-cv-00201
Before the Honorable Deborah L. Boardman

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' TIME-SENSITIVE
## MOTION TO STAY PENDING APPEAL

Nicholas Katz
CASA, INC.
8151 15th Avenue
Hyattsville, MD 20783

Conchita Cruz
Zachary Manfredi
Dorothy Tegeler
Leidy Perez
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502

William Powell
Mary B. McCord
Rupa Bhattacharyya
Joseph W. Mead
Alexandra Lichtenstein
Gregory Briker
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
GEORGETOWN LAW
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6629
whp25@georgetown.edu

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

BACKGROUND ................................................................................................. 3

STANDARD OF REVIEW ................................................................................ 7

ARGUMENT ....................................................................................................... 7

    I.      Defendants Will Suffer No Harm in the Absence of a Stay. .................... 7

    II.    Defendants Are Unlikely to Succeed on the Merits of Their
           Arguments for Narrowing the Injunction .................................................. 10

         A.   Nationwide Relief Is Appropriate in the Circumstances
             of This Case. ........................................................................................ 11

         B.   At a Minimum, the Injunction Necessarily Applies
             to All Members of Associational Plaintiffs. ...................................... 16

CONCLUSION ................................................................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'ns, Inc. v. Smith,*
496 U.S. 167 (1990) ................................................................................4

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ...............................................................................13

*CASA de Md., Inc. v. Trump,*
971 F.3d 220 (4th Cir. 2020) ................................................................16

*Centro Tepeyac v. Montgomery County,*
722 F.3d 184 (4th Cir. 2013) .............................................................9, 11

*City of Chicago v. Barr,*
961 F.3d 882 (7th Cir. 2020) ................................................................13

*Danforth v. Minnesota,*
552 U.S. 264 (2008) .................................................................................4

*Doe #1 v. Trump,*
957 F.3d 1050 (9th Cir. 2020) ..............................................................13

*Dred Scott v. Sandford,*
60 U.S. (19 How.) 393 (1857) ................................................................1

*Fedorenko v. United States,*
449 U.S. 490 (1981) .................................................................................1

*Florida v. HHS,*
19 F.4th 1271 (11th Cir. 2021) .............................................................13

*HIAS, Inc. v. Trump,*
985 F.3d 309 (4th Cir. 2021) ....................................................11, 12, 14

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,*
14 F.4th 322 (4th Cir. 2021) .................................................................16

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) .........................................................................18, 19

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock,* 477 U.S. 274 (1986) ..................................19

*Kleindienst v. Mandel,*
408 U.S. 753 (1972) ...............................................................................10

*Labrador v. Poe ex rel. Poe*,
144 S. Ct. 921 (2024) ...............................................................8, 15, 18

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) .............................................................8

*Marbury v. Madison*,
5 U.S. 137 (1803) ............................................................................10

*Nebraska v. Biden*,
52 F.4th 1044 (8th Cir. 2022) ...................................................13, 14

*Nken v. Holder*,
556 U.S. 418 (2009) ..........................................................................7

*Outdoor Amusement Bus. Ass'n v. DHS*,
983 F.3d 671 (4th Cir. 2020) ...........................................................17

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007) ...................................................................18, 20

*Quesinberry v. Life Ins. Co. of N. Am.*,
987 F.2d 1017 (4th Cir. 1993) (en banc) ........................................16

*Retail Indus. Leaders Ass'n v. Fielder*,
475 F.3d 180 (4th Cir. 2007) ...........................................................17

*Richmond Tenants Org., Inc. v. Kemp*,
956 F.2d 1300 (4th Cir. 1992) .........................................................11

*Roe v. DOD*,
947 F.3d 207 (4th Cir. 2020) .....................................................11, 12

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) .........................11, 17, 19, 20

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................................................17

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ........................................................................20

*Trump v. Int'l Refugee Assistance Project*,
582 U.S. 571 (2017) (per curiam) ...................................................12

*United States v. Wong Kim Ark*,
169 U.S. 649 (1898) ......................................................................2, 3

*Warth v. Seldin*,
422 U.S. 490 (1975) ...................................................................17, 20

**Constitutional Provisions**

U.S. Const. amend XIV, § 1 ............................................................ 1, 3

**Statutes**

8 U.S.C. § 1401(a) ...................................................................... 2, 3

**Other Authorities**

The Declaration of Independence (U.S. 1776) .................................... 1

Walter Dellinger, *Legislation Denying Citizenship at Birth to Certain Children Born in the United States*, 19 Op. O.L.C. 340, 349 (1995) .................. 1

Garrett Epps, *The Citizenship Clause: A "Legislative History"*, 60 Am. U. L. Rev. 331 (2011) ....................................................... 15

Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 29, 2025) .............. 3, 4

Abraham Lincoln, Address at Springfield, Ill. (June 26, 1857) .............. 1

**INTRODUCTION**

Birthright citizenship is at the core of this Nation's promise that "each person is born equal, with no curse of infirmity, and with no exalted status, arising from the circumstance of his or her parentage." Walter Dellinger, *Legislation Denying Citizenship at Birth to Certain Children Born in the United States*, 19 Op. O.L.C. 340, 349 (1995); *see also* The Declaration of Independence (U.S. 1776) (proclaiming, as a "self-evident" "truth," that "all men are created equal"). From the Founding to today, citizenship has been the birthright of nearly everyone born in the United States, regardless of the immigration status of their parents. Birthright citizenship is a "priceless treasure" that fuels the American dream. *Fedorenko v. United States*, 449 U.S. 490, 507 (1981).

The Supreme Court broke that promise in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857), denying citizenship to African-Americans born in the United States. As Abraham Lincoln put it, the reasoning of that decision made "a mere wreck" and "mangled ruin" of "our once glorious Declaration." Abraham Lincoln, Address at Springfield, Ill. (June 26, 1857). To correct the shameful *Dred Scott* decision, the people of this country ratified the Fourteenth Amendment. Its Citizenship Clause ensures that children born on our soil are citizens by birth. U.S. Const. amend XIV, § 1. More than 125 years ago, the Supreme Court held that the Citizenship Clause means what it says and guarantees birthright citizenship, subject to narrow common law exceptions, regardless of the immigration status of a child's parents. *United States v. Wong Kim Ark*,

169 U.S. 649 (1898). And in 1940, Congress codified that understanding in a federal statute. 8 U.S.C. § 1401(a).

This case is about President Trump's attempt to break the promise of birthright citizenship again. Shortly after taking office, he issued an Executive Order titled "Protecting the Meaning and Value of American Citizenship," which purports to reinterpret the Citizenship Clause to deny birthright citizenship to many children based on their parents' immigration status. The order is blatantly unlawful. It conflicts with binding Supreme Court precedent, the plain text of the Citizenship Clause, the plain text of a federal statute, and more than a century of executive practice. Plaintiffs brought this lawsuit to prevent the Executive Order from denying newborns the citizenship to which they are legally entitled. Finding that Plaintiffs had "easily" met the standard for a preliminary injunction, the district court enjoined Defendants "from implementing and enforcing the Executive Order" anywhere in the country. Add. 5.

Defendants now move this Court for a "time-sensitive" stay of the district court's nationwide injunction and have set an arbitrary deadline of February 27 for the Court to rule. Mot. 2. But there is no emergency. At this stage, Defendants do not challenge the district court's holding that the Executive Order is likely unconstitutional. And Defendants will not be harmed by continuing to respect the long-settled meaning of the Citizenship Clause, as they have for well over a century, while this litigation proceeds. Their stay motion should be denied on that basis alone.

In any event, Defendants are not likely to succeed on the merits of their arguments for narrowing the preliminary injunction. This Court's binding precedent establishes that nationwide injunctions can be appropriate in certain circumstances. And if any case requires nationwide relief, it is this one.

## BACKGROUND

The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1. In *Wong Kim Ark*, the Supreme Court held that the Citizenship Clause "affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes." 169 U.S. at 693. In 1940, Congress codified *Wong Kim Ark*'s holding in 8 U.S.C. § 1401(a), which likewise provides that "a person born in the United States, and subject to the jurisdiction thereof" is a "citizen[] of the United States at birth."

On January 20, 2025, President Trump issued his Executive Order. *See* Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 29, 2025). The Order proclaims that the Citizenship Clause should henceforth be interpreted not to extend birthright citizenship

to (1) children whose mothers are unlawfully present in the United States and whose fathers are neither lawful permanent residents nor citizens, and (2) children whose mothers are lawfully but temporarily present in the United States and whose fathers are neither lawful permanent residents nor citizens. Order § 1. The Order sets no effective date for that new interpretation of the Fourteenth Amendment, and it is unclear that any interpretation of the Constitution could be cabined to apply only prospectively. *Danforth v. Minnesota*, 552 U.S. 264, 286 (2008) ("Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense." (quoting *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 201 (1990) (Scalia, J., concurring in the judgment)). The Order directs federal agencies to stop recognizing the citizenship of covered children starting February 19, 2025, *id.* § 2, and to issue guidance on implementing the order by the same date, *id.* § 3.

Individual Plaintiffs are Maribel, Juana, Trinidad Garcia, Monica, and Liza. All five Individual Plaintiffs are pregnant, reside in the United States, and fear that their children will be denied United States citizenship under the Executive Order based on their immigration statuses and those of their children's fathers. Plaintiffs CASA and ASAP are immigrant-rights organizations with hundreds of thousands of members. Among those members are thousands of people, in all 50 states, who fall into the

categories of parents covered by the Executive Order and who are likely to give birth to a child in the United States in the near future.

Members of ASAP and CASA, like Individual Plaintiffs, fall into a variety of immigration statuses. Many are in the country legally, including those with pending asylum claims, pending applications for permanent residency, or Temporary Protected Status. Others are undocumented people who have lived in the United States for years. Many have older children who are U.S. citizens. But now the Executive Order threatens to deny their future children the birthright citizenship that the Constitution guarantees.

On January 21, Plaintiffs filed this lawsuit and moved for a preliminary injunction seeking to enjoin implementation and enforcement of the Executive Order. On February 5, following a hearing that same day, the district court issued an order and accompanying opinion granting the preliminary injunction. Add. 1–35.

The district court held that "[t]he plaintiffs easily have met the standard for a preliminary injunction." Add. 5. First, there is "a very strong likelihood of success on the merits." *Id.* The Executive Order's attempt to reinterpret the Citizenship Clause "contradicts the plain language of the Fourteenth Amendment and conflicts with 125-year-old binding Supreme Court precedent." Add. 14. Plaintiffs also demonstrated significant irreparable harm. Absent an injunction, they "will face instability and uncertainty about the citizenship status of their newborn babies, and their children born on U.S. soil will be denied the rights and benefits of U.S. citizenship." Add. 32–33. The balance of equities and the public interest likewise "weigh very strongly" in Plaintiffs'

favor. Add. 33. The district court therefore issued a nationwide injunction against implementation or enforcement of the Executive Order.[1] As to the scope of the injunction, the district court reasoned that "[o]nly a nationwide injunction will provide complete relief to the plaintiffs," given that "ASAP's members reside in every state and hundreds of them expect to give birth soon."[2] Add. 35. A nationwide injunction was also appropriate to maintain the uniformity of United States citizenship. *Id.*

Six days later, on February 11, Defendants filed a motion in the district court seeking to stay the injunction in part. Add. 100–07. Defendants did not contest the district court's grant of a preliminary injunction on the merits. Instead, they challenged only the scope of the injunction. They argued that the injunction should be limited to "the individual plaintiffs and the members of the organizational plaintiffs who have been identified in Plaintiffs' complaint or preliminary injunction papers." Add. 101. On February 18, the district court denied Defendants' stay motion. Add. 109–13. The district court explained that Defendants "have not made a strong showing that they are likely to succeed on their claim that the [district court] erred by granting a nationwide

---

[1] A proposed amicus brief from several nonprofit organizations incorrectly suggests that the district court enjoined the President. *See* Amicus Br. of America's Future et al., ECF 21, at 2. In fact, the district court entered the preliminary injunction against all Defendants except the President. Add. 2–3.

[2] The district court described the injunction as "nationwide," while also clarifying that it is "universal." *See* Add. 110 n.1. By whatever label, the district court's injunction applies both everywhere in the country and to nonparties who are similarly situated to Plaintiffs. This brief refers to the injunction as "nationwide" in that same sense.

injunction that enjoins the enforcement and the implementation of the Executive Order" and that Defendants "also have not shown that they will be irreparably injured without a partial stay." Add. 112.

On February 19, Defendants filed their stay motion in this Court. They request a decision by February 27. Mot. 2. The Court ordered Plaintiffs to respond on or before February 24. ECF 11.

## STANDARD OF REVIEW

A court considers four factors when deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted).

## ARGUMENT

### I. Defendants Will Suffer No Harm in the Absence of a Stay.

A nationwide injunction preserving the status quo as it has existed for well over a century will further the public interest without harming the government. Stays pending appeal are designed to address "the dilemma" that arises "when there is insufficient time to resolve the merits and irreparable harm may result from delay." *Nken*, 556 U.S. at 432. Accordingly, to obtain a stay, a movant must show they will be irreparably injured absent relief. *Id.* at 434 (explaining that merely showing "some

possibility of irreparable injury fails to satisfy the second factor" (internal quotation marks and citation omitted)). Here, Defendants have shown no harm from the district court's nationwide injunction, so their stay motion necessarily fails. *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring) ("If the moving party has not demonstrated irreparable harm, then [courts] can avoid delving into the merits.").

For well over a century, the Executive Branch has consistently recognized and honored the birthright citizenship of the categories of children covered by the Executive Order. Defendants cannot show that they will suffer any harm, much less irreparable harm, from an injunction that merely requires them to continue complying with the settled interpretation of the Citizenship Clause during the pendency of this litigation. Stays that disrupt the status quo are disfavored, and although the status quo may sometimes be difficult to define, it is obvious here in light of the many decades of consistent practice before the Executive Order. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (defining the status quo as "the last uncontested status between the parties which preceded the controversy").

Defendants also cannot show harm from the injunction given the high probability that the Executive Order is unlawful, under both the Citizenship Clause and 8 U.S.C. § 1401(a). Defendants do not directly contest the unlawfulness of the Executive Order in their motion to stay. Mot. 2 (stating that Defendants plan to wait for their merits briefing to defend the constitutionality of the Executive Order). And as the district court concluded, Defendants are not harmed by an injunction preventing

them from "'enforcing restrictions likely to be found unconstitutional.'" Add. 33 (quoting *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013)).

If anything, the injunction will benefit Defendants and serve the public interest by preventing Defendants from wasting time and taxpayer dollars on implementing, even in part, an Executive Order that plainly violates the Constitution. Indeed, because both the federal government and the states have operated on the assumption of birthright citizenship for so long, implementing the Order would be unworkable, calling into question what sort of documentation would establish citizenship for all Americans, not just children covered by the Order. Allowing the Order to go into effect only in part would cause even more chaos, requiring governments at the local, state, and federal level to ascertain whether a person is part of this or another lawsuit in order to determine whether their children are citizens. This Court should not exercise its equitable powers to reach such an inequitable result.

Defendants suggest that the injunction harms them by "prevent[ing] the President from carrying out his broad authority over and responsibility for immigration matters." Mot. 20. That argument is triply flawed. First, this is not a case about immigration. It concerns the rights of natural-born U.S. citizens. Second, reinterpreting the Fourteenth Amendment in derogation of binding Supreme Court precedent is not among the President's powers over immigration. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Third, it is Congress, not the President, that has "plenary power" to set

immigration rules. *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Through 8 U.S.C. § 1401(a), Congress adopted the Supreme Court's interpretation of the Citizenship Clause. Like the Constitution, that statute binds the President.

The balance of equities and public interest also support leaving the district court's injunction in place. As the district court explained, in the absence of an injunction, Plaintiffs "will face instability and uncertainty about the citizenship status of their newborn babies, and their children born on U.S. soil will be denied the rights and benefits of U.S. citizenship." Add. 32–33.

Because Defendants cannot show any need for emergency relief, and because the public interest strongly supports the district court's injunction, the Court can deny Defendants' stay motion without reaching the merits of their arguments about the scope of the injunction.

## II. Defendants Are Unlikely to Succeed on the Merits of Their Arguments for Narrowing the Injunction.

Like their novel reinterpretation of the Citizenship Clause, which conflicts with more than a century of Supreme Court decisions, Defendants' stay motion has a precedent problem. Defendants contend that nationwide injunctions are categorically barred by Article III and principles of equity, Mot. 9, and that an association with standing to sue on behalf of its members cannot obtain relief for those members without identifying them each individually, Mot. 16. But this Court has affirmed the power of district courts to issue injunctions that extend to nonparties when necessary.

*HIAS, Inc. v. Trump*, 985 F.3d 309, 326–27 (4th Cir. 2021). And the Supreme Court has recently reaffirmed the ability of associations to sue and obtain relief on behalf of unnamed members. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) ("*SFFA*"). Defendants say that this Court's controlling precedent on nationwide injunctions is "mistaken," Mot. 12, and they do not even cite the Supreme Court's decision on associational standing in *SFFA*. But Defendants' normative musings about the drawbacks of nationwide injunctions and associational standing give this Court no license to depart from controlling authority. The Court should reject Defendants' brazen attempt to rewrite the law.

## A. Nationwide Relief Is Appropriate in the Circumstances of This Case.

This Court reviews a district court's decision to grant a preliminary injunction only for an abuse of discretion. *Centro Tepeyac*, 722 F.3d at 188. Defendants therefore can show a likelihood of success on the merits of their arguments for narrowing the injunction only by demonstrating that this Court is likely to hold that the district court abused its "'wide discretion to fashion appropriate injunctive relief in a particular case.'" *Roe v. DOD*, 947 F.3d 207, 231 (4th Cir. 2020) (quoting *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992)). As the Supreme Court has explained, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (per curiam)

("*IRAP*"). Because the district court's nationwide injunction fits comfortably within the guidelines set by this Court's precedent, Defendants cannot establish that the district court abused its wide discretion.

Defendants first argue that nationwide injunctions "are fundamentally inconsistent with Article III and basic principles of equity." Mot. 9. But "binding precedent requires this Court to reject the Government's argument" that "an injunction extending relief to those who are similarly situated to the litigants is categorically beyond the equitable power of district courts." *Roe*, 947 F.3d at 232. Both this Court and the Supreme Court have "affirmed the equitable power of district courts, in appropriate cases, to issue nationwide injunctions extending relief to those who are similarly situated to the litigants." *Id.* (citing *IRAP*, 582 U.S. at 580); *see also IRAP*, 582 U.S. at 582–83 (declining to stay injunction that applied "with respect to parties similarly situated" to plaintiffs); *Roe*, 947 F.3d at 232–34 (affirming nationwide injunction that applied to plaintiffs and others similarly situated); *HIAS*, 985 F.3d at 326–27 (affirming injunction that applied to "six non-party resettlement agencies as well as the plaintiffs"). As the district court correctly explained in its opinion, a court "may issue a nationwide injunction so long as the court 'mold[s] its decree to meet the exigencies of the particular case.'" App. 34 (quoting *HIAS*, 985 F.3d at 326).

A broad injunction is appropriate—and, indeed, necessary—given the exigencies of this particular case. *Contra* Mot. 13. Most importantly, "[o]nly a nationwide injunction will provide complete relief to the plaintiffs." Add 35. Generally speaking, "injunctive

relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). But consistent with traditional notions of equity, sometimes a nationwide injunction is in fact necessary to remedy a plaintiff's injury, such as where a court would have "trouble fashioning a remedy that was certain to include all the plaintiffs" because they are "dispersed among the United States." *Florida v. HHS*, 19 F.4th 1271, 1282 (11th Cir. 2021); *see also City of Chicago v. Barr*, 961 F.3d 882, 916 (7th Cir. 2020) (explaining that "universal injunctions can be necessary to provide complete relief to plaintiffs" (internal quotation marks omitted)); *Doe #1 v. Trump*, 957 F.3d 1050, 1069–70 (9th Cir. 2020) (upholding nationwide injunction as necessary to provide complete relief to plaintiffs).

In this case, only a nationwide injunction will prevent irreparable harm to Plaintiffs. An injunction limited to the parties, including all members of ASAP and CASA,[3] would be nearly impossible for the district court and the government to administer and thus "would fail to provide complete relief to the plaintiffs." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022). Under current law, a birth certificate alone is sufficient proof of United States citizenship, and birth certificates do not list whether a child's parents are members of ASAP or CASA. Requiring children covered by the Executive Order to show that their parents are members of ASAP or CASA in order

---

[3] Defendants' further argument that the injunction should cover only the pseudonymously identified members of ASAP and CASA conflicts with settled principles of associational standing. Plaintiffs address that argument below. *See infra* Part II.B.

to obtain the benefits of the injunction—and the right to citizenship—would be burdensome, inefficient, and unworkable. Such a system would be especially difficult to manage in the context of birthright citizenship given that ASAP and CASA collectively represent hundreds of thousands of members, with new members joining regularly, "mak[ing] any limits uncertain in their application and effectiveness." *Id.* The stress and confusion that would result from requiring parents to prove that their babies are covered by the injunction would inflict the very harms that the injunction was designed to prevent. Although Plaintiffs raised these issues in opposing Defendants' stay motion in the district court, Defendants offer no response in their motion here.

A nationwide injunction is also appropriate to preserve the equal treatment of newborn babies under the Citizenship Clause. Citizenship is an area where consistency is particularly important, and the injunction preserves nationwide uniformity on this most fundamental right. *See HIAS*, 985 F.3d at 327 (upholding a nationwide injunction because a narrower injunction "would cause inequitable treatment of refugees and undermine the very national consistency that the Refugee Act is designed to protect"). Absent a nationwide injunction, a baby's entitlement to birthright citizenship would depend on whether they had the means to sue. That state of affairs would risk creating a permanent underclass of people deprived of the fundamental right to citizenship, even as similarly situated individuals who came to court obtained that benefit. "To punish babies, much less to proscribe and entirely outlaw them, because of the perceived sins of their parents"—or here, because of whether their parents joined a lawsuit—"is alien

to our moral and ethical tradition." Garrett Epps, *The Citizenship Clause: A "Legislative History"*, 60 Am. U. L. Rev. 331, 371 (2011). Equity cannot countenance that result. The overwhelming weight of authority supports a nationwide injunction in this case.

The Supreme Court's decision granting a partial stay of an injunction in *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024), is not to the contrary. That case involved a lawsuit by two individuals challenging an Idaho law concerning medical care for minors. The district court enjoined the law entirely, including as to provisions governing forms of care the plaintiffs had not tried to obtain, and the Supreme Court granted a stay limiting the injunction to the plaintiffs and the specific care they sought. *Id.* at 921. Defendants claim the decision "was premised on five Justices' conclusion that universal injunctions providing relief beyond the parties to the case are likely impermissible." Mot. 12. That overstates the import of the separate opinions in *Labrador* and ignores important differences between this case and that one. Although Justice Gorsuch, writing for himself and two other Justices, expressed disapproval of nationwide injunctions generally, *id.* at 927–28 (Gorsuch, J., concurring), Justice Kavanaugh, joined by Justice Barrett, said only that "prohibiting nationwide or statewide injunctions *may* turn out to be the right rule as a matter of law" and that the State was likely to prevail on its arguments about the scope of the injunction in the particular circumstances of that case, *id.* at 931, 933 n.4 (Kavanaugh, J., concurring) (emphasis added).

Factually, this case presents a much stronger basis for a nationwide injunction. It involves a blatantly unconstitutional Executive Order that deprives the children of

many noncitizens across the country of birthright citizenship, and ASAP and CASA represent the interests of hundreds of thousands of members in all 50 states who are affected by that Order. In any event, Justices' predictions about what the Supreme Court might rule in the future with respect to nationwide injunctions do not overrule this Court's precedents holding that nationwide injunctions are in fact permissible.

Defendants' citation to the vacated panel opinion in *CASA de Md., Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020), carries even less weight. A vacated opinion has "no precedential value." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 n.10 (4th Cir. 1993) (en banc); *see also Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021) (Wynn, J., concurring) ("[V]acated opinions do not even bear the label of dicta.").

Controlling law supports the nationwide injunction entered by the district court here. Defendants offer no basis for staying that relief.

### B.   At a Minimum, the Injunction Necessarily Applies to All Members of Associational Plaintiffs.

Defendants also attack settled principles of associational standing. They contend that if the injunction is limited to the parties, it should apply only to Individual Plaintiffs and pseudonymously identified members of Associational Plaintiffs—but not their hundreds of thousands of other members. Mot. 14–19. That argument has no basis in law and should be summarily rejected. Any party-specific injunction must cover at least all five Individual Plaintiffs and all members of the two Associational Plaintiffs. But the

Court need not consider this argument because it is clear the district court properly granted nationwide relief.

Although Defendants frame their argument as concerning the scope of relief, it is really an attack on associational standing. As the Supreme Court has recently reaffirmed, an association can "assert 'standing solely as the representative of its members.'" *SFFA*, 600 U.S. at 199 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). The association must demonstrate that "just one of the association's members would have standing." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007); *see also, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (noting the requirement that "at least one identified member had suffered or would suffer harm"). Once that showing is made, the remedy granted to an associational plaintiff is not limited to identified members. Rather, when "the association seeks a declaration, injunction, or some other form of prospective relief," that remedy "will inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515; *see, e.g., Outdoor Amusement Bus. Ass'n v. DHS*, 983 F.3d 671, 683 (4th Cir. 2020) (explaining that an injunction would "benefit many of" an associational plaintiff's members). No precedent suggests that each injured member must be specifically identified before an injunction can reach them. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007) (explaining that plaintiffs sought an injunction "on behalf of Parents Involved members whose elementary and middle school children may be 'denied admission to the high schools of their choice when they apply for those schools in the

future'"); *see also Labrador*, 144 S. Ct. at 932 (Kavanaugh, J., concurring) (noting the "widespread effect" of an injunction issued to "an association that has many members").

Defendants' position is irreconcilable with the Supreme Court's decision in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). A statewide commission brought that case on behalf of apple growers and producers throughout Washington to challenge the constitutionality of a North Carolina statute. *Id.* at 335. The district court issued a permanent injunction broadly barring enforcement of the statute, and the Supreme Court affirmed in all respects. The Court noted that the plaintiff organization could assert "the claims of the Washington apple growers and dealers who form its constituency." *Id.* at 344–45. At no point did the Supreme Court suggest that the injunction would apply only to specific apple growers who had been identified. Instead, the Court noted that "the request for declaratory and injunctive relief" did not require "individualized proof" and was "properly resolved in a group context." *Id.* at 344. The same is true here.

Accepting Defendants' argument would not just narrow the relief in this case; it would put an end to associational standing—in direct contravention of binding precedent. For an association to have standing in the first place, it must demonstrate that "neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit." *SFFA*, 600 U.S. at 199 (emphasis added) (quoting *Hunt*, 432 U.S. at 343). Plaintiffs made that showing in the court below, as Defendants

do not contest. But Defendants now argue, contrary to *SFFA*, that the Associational

Plaintiffs can obtain the relief requested only "by having members join the complaint,

by identifying and asserting each affected member's specific claim, or by seeking to

certify a class that includes their claims." Mot. 18. That is not an argument about the

scope of relief, but rather an argument that associational standing should be eliminated.

Again, in light of binding Supreme Court precedent, doing away with associational

standing is beyond the powers of this Court.

Defendants' arguments about preclusion principles and class-action procedures

are likewise an attack on associational standing, not on the scope of relief. And the

Supreme Court, in the very case Defendants cite, aired and rejected similar objections

to associational standing. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers

of Am. v. Brock*, 477 U.S. 274, 288–90 (1986) (declining to "abandon settled principles

of associational standing" despite arguments about class-action procedures and

preclusion). In any event, those objections are wrong. It is ASAP and CASA, not their

members, who are parties to this case, and the final judgment here will be res judicata

as to ASAP and CASA.[4] *Cf. Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008) (discussing

---

[4] Defendants note that not all members of ASAP and CASA are currently pregnant. This is true. But associational standing is premised on the ability of a court to issue an injunction to an entire association, and that injunction will then "inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515. For that reason, Students for Fair Admissions can obtain relief against Harvard without showing that every single one of its members applied to Harvard. *See SFFA*, 600 U.S. at 199; *see also Parents Involved in Cmty. Schs.*, 551 U.S. at 718–19 (holding that an association had standing even if some members were not injured by the challenged policy).

the "rule against nonparty preclusion" and listing narrow exceptions not applicable here).

At a minimum, any party-specific injunction must apply to all members of ASAP and CASA, including both existing and new members. That is beside the point, however, because the district court properly granted nationwide relief, as explained above.

## CONCLUSION

Defendants' motion for a stay pending appeal should be denied.


Respectfully submitted this 24th day of February, 2025.


Nicholas Katz, Esq.
CASA, INC.
8151 15th Avenue
Hyattsville, MD 20783
(240) 491-5743
nkatz@wearecasa.org

Conchita Cruz
Zachary Manfredi
Dorothy Tegeler
Leidy Perez
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org
dorothy.tegeler@asylumadvocacy.org
leidy.perez@asylumadvocacy.org

/s/ William Powell
William Powell
Mary B. McCord
Rupa Bhattacharyya
Joseph W. Mead
Alexandra Lichtenstein
Gregory Briker
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
GEORGETOWN LAW
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6629
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
jm3468@georgetown.edu
arl48@georgetown.edu
gb954@georgetown.edu


*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this response complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,160 words. This response was prepared in 14-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

/s/ William Powell
William Powell
Counsel for Plaintiffs-Appellees

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ William Powell
William Powell
Counsel for Plaintiffs-Appellees