IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| CASA, INC., et al.,<br><br>    Plaintiffs-Appellees,<br><br>    v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants-Appellants. | No. 25-1153 |

**REPLY IN SUPPORT OF TIME-SENSITIVE
MOTION FOR STAY PENDING APPEAL**

Plaintiffs here—two associations claiming hundreds of thousands of members nationwide—frankly acknowledge that many of their members lack standing to challenge the Executive Order at issue. They state that their members "fall into a variety of immigration statuses," Opp. 5, and concede that "not all members . . . are currently pregnant," Opp. 19 n.4. But they nevertheless defend as appropriate a nationwide injunction premised on the wide geographic spread of their membership, based on a showing of injuries to sixteen discrete individuals. That injunction is fundamentally inequitable and wholly unnecessary to provide relief to plaintiffs' members.

The injunction should be stayed as it applies beyond the sixteen individuals who established Article III standing, or at a minimum as it applies beyond the individual plaintiffs and the members of the plaintiff associations.

I. **The Government is Likely to Succeed on Its Claim that the Nationwide Injunction was Improper.**

At the outset, plaintiffs have no persuasive account for why nationwide relief is necessary to provide relief to their members. Plaintiffs acknowledge (Opp. 12-13) the principle that injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). They urge that such nationwide relief is necessary because relief applied to their members would be "unworkable." Opp. 14. But plaintiffs' response outlines a workable approach: requiring the federal government to treat anyone as a citizen who has a birth certificate establishing birth in the United States and who can "show that their parents [were] members of ASAP or CASA" when the suit was filed. *See* Opp. 13. Indeed, that would be the ordinary course in any litigation: individuals covered by an injunction would be identified to the defendants and thus receive the

protection of the injunction. And such claims of unworkability are especially suspect given that plaintiffs acknowledge that out of their purported hundreds of thousands of members, only a tiny fraction could plausibly have any claim to relief—and thus face any harm while this litigation proceeds to final judgment in district court. *See* Opp. 4-5, 19 n.4.

Against this backdrop, there is little substance to plaintiffs' invocation (Opp. 12) of cases from this Court stating that nationwide relief may be appropriate in some circumstances. The question is whether nationwide relief is appropriate *here*, and this Court has not hesitated to reverse injunctions "broader than necessary to afford full relief" to plaintiffs. *Virginia Soc'y for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001). And aside from the purported unworkability of a narrower injunction, the only justification plaintiffs offer for the sweeping scope of the injunction is the claim that uniformity of citizenship requires nationwide relief. But as our motion explained (at 13), that rule is overinclusive in multiple respects: on that logic, *any* challenge to a federal policy would warrant a nationwide injunction, as party-specific relief would result in some parties not obtaining relief while "similarly situated

individuals who came to court" receive an injunction. Opp. 14. That, too, is simply the nature of party litigation.

Plaintiffs likewise have no account for why an injunction should reach hundreds of thousands of members nationwide, the overwhelming majority of whom lack Article III standing. Of their "hundreds of thousand of members" for whom they obtained relief, the associations believe "thousands … fall into the categories of parents covered by the Executive Order and who are likely to give birth to a child . . . in the near future." Opp. 4-5; *see* Opp. 19 n.4. They "know" of only a few hundred who are pregnant, Add. 54, ¶ 46, and their complaint identified only sixteen with standing, Mot. 14.

Facing this Article III obstacle, the associations argue (at 16-19) that members who lack standing, and who would be unable to obtain injunctive relief on their own, can be transformed through associational standing into individuals who can obtain injunctive relief. Indeed, they do not stop there: they assert that by bringing suit on behalf of their members, they have created an open-ended entitlement for all *future* members to likewise obtain the benefit of this injunction, insisting that relief must run to "both existing and new members," regardless of whether those individuals are

pregnant or otherwise face any actual injury from the Executive Order. Opp. 19. All this while claiming (at 19-20) that even current members would not be bound by an adverse judgment.

But in any event, plaintiffs cite nothing for the premise that an injunction or other relief can run to individuals who entirely lack standing merely because they are members of an association that includes some other members who do have standing. Indeed, they directly address this issue only in a footnote, *see* Opp. 19 n.4, and the case they cite undermines their position. The Supreme Court in *Warth v. Seldin* explained that associational standing may be appropriate when "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." 422 U.S. 490, 515 (1975). *Warth* did not suggest that a remedy would be appropriate for members of an association *not* actually injured, and elsewhere made clear that associational standing "does not eliminate or attenuate the constitutional requirement of a case or controversy." *Id.* at 511. Indeed, were it otherwise, associations would be entitled to more injunctive relief than all of their members would collectively be able to obtain on their own. Nothing supports that premise.

Indeed, many of the cases plaintiffs cite are irrelevant or illustrate unremarkable premises about associational standing. In two cases, no injunctive relief was ordered, and in any event those cases stand only for the basic proposition that the presence of one member with standing is sufficient to invoke a court's power to decide the merits. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007);[1] *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 690 (4th Cir. 2020). Neither suggests that relief for uninjured members is appropriate. Other cases illustrate that sometimes relief affecting non-parties is necessary to give a plaintiff complete relief. In *Parents Involved in Community Schools v. Seattle School District No. 1*, for example, the Supreme Court addressed a challenge to race-based considerations in public school placement, and explained that the possibility that admission to a particular school would not be denied did not "eliminate the injury claimed" and that plaintiffs continued to face the injury of "being forced to compete in a race-based system that may prejudice the plaintiff." 551 U.S. 701, 719 (2007). Similarly, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard*

---

[1] *See Retail Indus. Leaders Ass'n v. Fielder*, 435 F. Supp. 2d 481, 484 n.1 (D. Md. 2006) (declining to grant injunctive relief).

*College* involved issues related to race in college admissions, and at least one member had established standing to challenge the colleges' policies. 600 U.S. 181, 198 (2023). Cases where a remedy for one plaintiff must necessarily affect the entire admissions process do not suggest that an organization can seek or obtain relief on behalf of individuals who entirely lack standing.

Nor do plaintiffs explain why it would be equitable here to apply an injunction to a host of members who plaintiffs themselves cannot identify. They do not claim to know which of their members actually have standing while simultaneously conceding it is only a small fraction of their membership. In other words, the associations do not even know whose claims they purport to press. Plaintiffs attempt to sidestep with the assertion that they—not the members they represent—are the "parties to this case," Opp. 18, but that ignores that the associations themselves have no claims of their own. They can only proceed because they "assert the claims of [their] members." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977). Given that plaintiffs themselves do not even know whose claims they "assert"—and thus which of their members they are actually binding to a judgment—it is hardly inappropriate to limit relief to

7

those members plaintiffs have actually identified with standing. Nor would this require upending associational standing doctrine, as plaintiffs suggest. In many circumstances, all members of an association may be injured, as in *Hunt* itself, or the organization may come forward on behalf of a defined subset of its membership that has standing. But plaintiffs cannot advance no claim of injury on behalf of 99% of their membership and leverage that into relief for all, much less a nationwide injunction premised on the need to protect uninjured members.

## II. The Other Factors Warrant a Stay.

As our motion explained (at 20-22), the other stay factors warrant a partial stay. Plaintiffs first claim (at 7) the government has "no harm" from the nationwide injunction. They then go further and claim (at 9) the injunction actually "benefit[s]" the government. Litigants and courts deciding what is best for the Executive Branch would impose its own "form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotation marks omitted). The President is "a representative of the people" and holds "the mandate of the people to exercise his executive power." *Myers v. United States*, 272 U.S. 52, 123 (1926). The government has a substantial interest in carrying out his

policies. Courts play an important role in adjudicating the lawfulness of those policies in justiciable cases, but they irreparably injure our democratic system when they forbid the government from effectuating those policies against anyone anywhere in the Nation.

By contrast, the beneficiaries of the injunction beyond the sixteen identified individuals with standing are not proper parties, and staying relief to those non-parties does not cause any irreparable harm to the sixteen individuals identified in the complaint. *See* Mot. 20.

## CONCLUSION

For the foregoing reasons, this Court should stay the district court's nationwide preliminary injunction except as to the sixteen identified individuals.

Respectfully submitted,

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD

 *s/ Derek Weiss*
_____
Derek Weiss
(202) 616-5365
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Room 7325*
  *Washington, DC 20530*

FEBRUARY 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion satisfies the type-volume requirements set out in Rule 27(d)(2)(A) because it contains 1,672 words. This motion was prepared using Microsoft Word in Book Antiqua, 14-point font, a proportionally spaced typeface.

*s/ Derek Weiss*
Derek Weiss

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Derek Weiss*
Derek Weiss
